**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------X
UNITED STATES OF AMERICA              :
                                      :
     -against-                        :
                                      :
FIDENCIO CRESPO-CASTELAN,             :
                                      :
                    Defendant.        :
------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/22/22

No. 22 Cr. 009 (JFK)

**OPINION & ORDER**

APPEARANCES

FOR DEFENDANT FIDENCIO CRESPO-CASTELAN:
     Martin Samuel Cohen
     FEDREAL DEFENDERS OF NEW YORK

FOR THE UNITED STATES OF AMERICA:
     Andrew Jones
     U.S. ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF NEW YORK

**JOHN F. KEENAN, United States District Judge:**

Before the Court is Defendant Fidencio Crespo-Castelan's ("Crespo-Castelan") motion to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 12(b).  In the motion, Crespo-Castelan argues that the indictment must be dismissed because the statute under which he was indicted, 8 U.S.C. § 1326, violates the equal protection guarantee of the Fifth Amendment.  For the reasons set forth below, Crespo-Castelan's motion is DENIED.

**I. Background**

Crespo-Castelan, a citizen of Mexico, was arrested in 2005 while attempting to smuggle thirteen people into the United States.  (Complaint ("Compl.") ¶ 3(b), ECF No. 1.)  He was

subsequently charged and convicted of smuggling an illegal alien
into the United States in violation of 8 U.S.C. § 1324 and
sentenced to 15 months' imprisonment.  (Id. ¶ 3(c).)  In 2006,
he was deported from the United States to Mexico.  (Id. ¶ (d).)
Sometime thereafter, Crespo-Castelan illegally re-entered the
United States.  (Government Memorandum in Opposition ("Mem. in
Opp'n") at 1, ECF No. 22.)  In December 2021, he was charged by
complaint and arrested for illegally returning to the United
States after his deportation in violation of 8 U.S.C. § 1326(a),
(b)(2).  (Id.)  Crespo-Castelan was indicted on the same charge
in January 2022.  (Id.)

     In April 2022, Crespo-Castelan filed the instant motion to
dismiss the indictment.  (Motion to Dismiss the Indictment, ECF
No. 15.)  In his motion, Crespo-Castelan argues that § 1326
violates the equal protection guarantee of the Fifth Amendment
Due Process Clause because "the crime of illegal reentry was
enacted with a discriminatory purpose whose taint has never been
lifted."  (Memorandum of Law in Support ("Mem. of L.") at 3, ECF
No. 16.)  In support of this claim, Crespo-Castelan relies
heavily on United States v. Carrillo-Lopez, 555 F. Supp. 3d 996,
1027 (D. Nev. 2021), which held that § 1326 was unconstitutional
for substantially the same reasons Crespo-Castelan argues here.

     In response, the Government argues that Crespo-Castelan's
equal protection challenge fails because § 1326, which was

passed in 1952 as part of the Immigration and Nationality Act ("INA"), was not enacted with a discriminatory purpose.  (Mem. in Opp'n at 1.)  The Government notes that with the exception of the district court that decided Carrillo—Lopez, every court to address this issue has rejected the arguments raised in Crespo-Castelan's motion.  (Mem. in Opp'n at 2 n.1 (collecting cases).)  As explained in greater detail below, the Court agrees with the Government and concludes that Crespo-Castelan has failed to allege an equal protection claim.

## II. Discussion

### A. Legal Standard

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "[T]he Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups."  Washington v. Davis, 426 U.S. 229, 239 (1976).  A facially neutral statute, such as the one at issue here, can violate equal protection principles if it has a racially disparate impact and a "racially discriminatory intent or purpose" served as "a motivating factor" in its enactment. See Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 265–66 (1977).  The party asserting that a "law was enacted with discriminatory intent"

carries the burden of proof.  <u>Abbott v. Perez</u>, 138 S. Ct. 2305, 2324 (2018).  If the challenging party can carry that burden, the statute is reviewed under strict scrutiny.  <u>See</u> <u>Hunt v. Cromartie</u>, 526 U.S. 541, 546 (1999).  If the evidence of discriminatory intent is inadequate, however, the constitutional inquiry ends.  <u>Arlington Heights</u>, 429 U.S. at 271.

Crespo-Castelan brings his equal protection claim under the standard set forth in <u>Arlington Heights</u>.  He argues that because "§ 1326 was enacted with a discriminatory purpose and has a disparate impact on Latinos," strict scrutiny should apply. (Mem. of L. at 3, 13.)  Conversely, the Government argues that § 1326 should be subject to rational basis review because the statute was enacted pursuant to Congress's "plenary . . . power to make policies and rules for exclusion of aliens." (Mem. in Opp'n at 2 (<u>quoting</u> <u>Kleindienst v. Mandel</u>, 408 U.S. 753, 769, (1972)).)  In the alternative, the Government contends that "because [Crespo-Castelan's] motion fails under either test, the Court need not address the issue."  (Mem. in Opp'n at 2, n.1.) The Court agrees and does not address the parties' arguments concerning the applicable standard of review because Crespo-Castelan's motion fails under the more demanding standard of <u>Arlington Heights</u>.  <u>See</u> <u>United States v. Suquilanda</u>, No. 21 Cr. 263 (VM), 2021 WL 4895956, at *5 n.3 (S.D.N.Y. Oct. 20, 2021) ("Because the Court would reject [defendant]'s argument under

4

the strict standard of Arlington Heights, the Court need not
conclude which level of review applies.").

### B. Application

To establish a claim under Arlington Heights, Crespo-
Castelan must demonstrate that the enactment of § 1326 was
motivated, at least in part, by racial animus.  See Arlington
Heights, 429 U.S. at 253 ("Proof of racially discriminatory
intent or purpose is required to show a violation of the Equal
Protection Clause.").  In Arlington Heights, the Supreme Court
established certain non-exhaustive factors to guide the
"sensitive inquiry" into whether a challenged government action
was motivated by an "invidious discriminatory purpose."  Id. at
266.  These factors include "the impact of the official action,"
the "historical background of the decision," the "specific
sequence of events leading up to the challenged decision,"
"[d]epartures from the normal procedural [or substantive]
sequence," and the "legislative or administrative history."  Id.
at 266–68.

Here, Crespo-Castelan argues that racism was "the primary
factor" behind the criminalization of illegal reentry in 1929
and that the later reenactment of the law in 1952 did not
"cleanse the statute of its racist origins."  (Mem. of L. at 3.)
In support of his claim, Crespo-Castelan relies primarily on the
history of the 1929 statute—the Unlawful Aliens Act ("UAA")—and

5

the considerable evidence that the statute was motivated, at least in part, by racial animus toward persons of Latin American descent.  (Mem. of L. at 3–13.)  Crespo-Castelan argues that the discriminatory motivations of the 1929 Congress should be imputed to the Congress that reenacted § 1326 because it "neither acknowledged nor addressed" the statute's history and "provid[ed] no . . . race-neutral reason for the reenactment." (Reply at 6.)  Finally, Crespo-Castelan argues that even if the Court were to ignore the discriminatory intent behind the UAA, the legislative history of § 1326 demonstrates that "racial animus . . . [was] an explicit motivating factor in the recodification of the illegal reentry provision."  (Reply at 1.) In support of this claim, Crespo-Castelan relies on: (1) a veto statement by President Harry Truman, who wrote that the INA "would perpetuate injustices of long standing against many other nations of the world"; (2) a memo from Deputy Attorney General Peyton Ford to Senate Judiciary Committee Chairman Pat McCarran, which called for the bill to be more punitive and described the bill's targets as "wetbacks"; and (3) the fact that several members of Congress used the same racial slur to describe the INA.[1]  (Mem. of L. at 10–13.)

---

[1] The historical evidence cited by Crespo-Castelan is drawn primarily from the work of Dr. S. Deborah Kang, an associate professor of history at the University of Virginia.  (Mem. of L. at 2.)

In sum, Crespo-Castelan argues that Congress's failure to expressly repudiate the racist motivations of the 1929 statute, coupled with evidence of continued expressions of racism in 1952, demonstrates that § 1326 was enacted with a discriminatory purpose.  The Court disagrees.

As the Government correctly notes in its Opposition, Crespo-Castelan "[a]t most . . . may be able to show that a different immigration law, the one passed in 1929, was enacted with a discriminatory purpose."  (Mem. in Opp'n at 3.)  Evidence of prior discriminatory intent, however, cannot satisfy Crespo-Castelan's burden of establishing that § 1326 was enacted, or later modified, with a discriminatory purpose.  Under Arlington Heights, the Court is obligated "to look at the motivation behind the official action being challenged."  United States v. Rodriguez-Arevalo, No. 19 Cr. 281 (JPW), 2022 WL 1542151, at *5 (M.D. Pa. May 16, 2022).  Here, the official action being challenged is the statute under which Crespo-Castelan has been charged—8 U.S.C. § 1326.  The history behind the UAA, although relevant to the Court's inquiry, "does not directly control the Arlington Heights analysis" of § 1326.  United States v. Munoz-De La O, No. 20 Cr. 134 (RMP), 2022 WL 508892, at *11 (E.D. Wash. Feb. 18, 2022); see also United States v. Hernandez-Lopez, No. CR H-21-440, 2022 WL 313774, at *3 (S.D. Tex. Feb. 2, 2022) (noting that although the "dark history" behind the 1929 law "is

relevant to understanding the historical backdrop behind the
unlawful reentry provisions . . . it is not dispositive for
understanding the motivation for [§ 1326] . . . because that
provision was reenacted in 1952, and the penalty provision at
issue was enacted in 1988"); Suquilanda, 2021 WL 4895956, at *5
(noting evidence of racial animus surrounding the passage of the
1929 statute "bears little weight on Section 1326, which was
officially reenacted as a felony offense in 1952 as part of the
broader [INA]").  Accordingly, the proper focus of the Court's
inquiry is the intent of the Congress that enacted the INA in
1952, not the intent of the 1929 Congress and the historical
background of the UAA.

    In arguing that the improper intent of the 1929 Congress
should be imputed to the 1952 Congress, Crespo-Castelan relies
on the Supreme Court's decisions in Ramos v. Louisiana, 140 S.
Ct. 1390 (2020), and Espinoza v. Mont. Dep't of Revenue, 140 S.
Ct. 2246 (2020).  Crespo-Castelan contends that "[t]he Supreme
Court . . . has rejected the idea that reenacting a law
originally passed with a discriminatory purpose cleanses it of
the original invidious purpose."  (Reply at 6 (citing Ramos, 140
S. Ct. at 1401 n.44; Espinoza, 140 S. Ct. at 2259).)  He further
argues that Ramos and Espinoza stand for the proposition that
"[a] statute's discriminatory intent will remain a motivating

factor until a subsequent legislature consciously confronts and
disclaims it."  (Id. at 3.)

Crespo-Castelan's reliance on these decisions is misplaced.
Both Ramos and Espinoza certainly support the proposition that
subsequent reenactments of a statute do not entirely "cleanse[]
[the statute] of its original invidious purpose." (Reply at 6.)
Neither decision, however, "hold[s] that the discriminatory
motivations of a previous legislature are determinative of the
outcome of an Arlington Heights analysis of a law enacted by a
subsequent legislature." United States v. Rios-Montano, No. 19
Cr. 2123 (GPC), 2020 WL 7226441, at *4 (S.D. Cal. Dec. 8, 2020);
see also United States v. Zepeda, No. Cr. 20-57 (FMO), 2021 WL
4998418, at *3 (C.D. Cal. Jan. 5, 2021) ("[T]he court is
unpersuaded that [Ramos] and Espinoza support defendant's
contention that § 1326 should be judged according to legislative
history from laws enacted decades earlier.").  Indeed, Congress
enjoys a "presumption of legislative good faith[,]" which is
"not changed by a finding of past discrimination." Abbott, 138
S. Ct. at 2324.  Here, the 82nd Congress's silence regarding the
racial animus behind the 1929 law "does not prove discriminatory
intent" and "falls well short of overcoming the presumption that
Congress acted in good faith." Calvillo-Diaz, No. 21 Cr. 445
(JJT), 2022 WL 1607525, at *8-10 (N.D. Ill. May 20, 2022); see
also United States v. Novondo-Ceballos, 554 F. Supp. 3d 1114,

1122 (D.N.M. 2021) ("[C]ourts have rejected the notion that prior congressional intent remains operative until a future Congress makes an affirmative contrary showing." (collecting cases)).  The Court, therefore, will limit its review to the historical context of the INA and the intent of the 1952 Congress that enacted it.

As noted above, Crespo-Castelan relies on three pieces of evidence in support of his claim that Congress was motivated, at least in part, by racial animus when it passed § 1326.  He points to (1) President Truman's veto statement, (2) a memo written by Deputy Attorney General Peyton Ford, and (3) racist remarks made by various members of Congress.  The Court follows the reasoning of the vast majority of courts that have considered this evidence and concludes that it fails to establish that racial animus was a motivating factor behind the reenactment of § 1326.  See, e.g., United States v. Ramirez-Aleman, No. 21 Cr. 3403 (BEN), 2022 WL 1271139, at *6 (S.D. Cal. Apr. 27, 2022) ("Defendant has not shown that the 82nd Congress was motivated by a discriminatory intent when it re-enacted § 1326 in 1952."); Suquilanda, 2021 WL 4895956, at *5 ("[T]he Court is not persuaded [that the defendant], or any other criminal defendant in the many cases rejecting such arguments, has carried his burden of showing Section 1326 was enacted, or later modified, with discriminatory intent."); United States v.

10

Machic-Xiap, 552 F. Supp. 3d 1055, 1075 (D. Or. 2021) (concluding that the legislative history and sequence of events preceding the enactment of § 1326 "does not support the conclusion that racial animus motivated Congress to enact § 1326").

First, President Truman's veto statement does not demonstrate that Congress was motivated by a discriminatory purpose.  President Truman was not a member of the 82nd Congress, and the Supreme Court has cautioned that statements by a bill's opponents are not probative of Congressional intent. See Bryan v. United States, 524 U.S. 184, 196 (1998) ("The fears and doubts of the opposition are no authoritative guide to the construction of legislation." (citation and internal quotation marks omitted)).  Additionally, as the Court in Machic-Xiap noted, President Truman's veto statement "tells the Court nothing about what [he] thought about § 1326 specifically" because his "full statement reveals that his concern with the INA [was mostly] about the INA's continued use of the quotas that disfavored immigrants from Asia and southern and eastern Europe, not with its treatment of immigrants from Latin America."  552 F. Supp. 3d at 1075.

Second, Deputy Attorney General Ford's memo to Congress is similarly irrelevant to understanding Congress' intent.  Like President Truman, Deputy Attorney General Ford was not a member

11

of Congress and his memo "give[s] no direct insight into the motivations of the 1952 Congress that passed the law." Munoz-De La O, 2022 WL 508892, at *13.  Finally, the racist statements made by Congressional sponsors of the bill do not demonstrate that the 82nd Congress was motivated by racial animus. Statements made by individual members of Congress "cannot be attributed to the entire Congress, especially when others in Congress expressed the opposite sentiment." Machic-Xiap, 552 F. Supp. 3d at 1075 (citation omitted).  For strict scrutiny to apply under Arlington Heights, the court must find "evidence that the legislature as a whole was imbued with racial motives." Brnovich v. Democratic Nat'l Comm., 141 S. Ct. 2321, 2350 (2021).  Because Crespo-Castelan's evidence fails to meet this burden, his claim under Arlington Heights fails.

Having reviewed the arguments and evidence offered by Crespo-Castelan, as well as the numerous cases cited by the Government, the Court concludes that Crespo-Castelan has failed to demonstrate that racial animus was a motivating factor behind the enactment of 8 U.S.C. § 1326.  Accordingly, the Court concludes that no evidentiary hearing is necessary to resolve the instant motion and denies Crespo-Castelan's motion to dismiss the indictment.  See Charette v. Town of Oyster Bay, 159 F.3d 749, 755 (2d Cir. 1998) ("An evidentiary hearing is not required when the relevant facts either are not in dispute or

12

have been clearly demonstrated at prior stages of the case . . . or when the disputed facts are amenable to complete resolution on a paper record." (internal citations omitted)).

## III. Conclusion

For the foregoing reasons, Crespo-Castelan's motion to dismiss the indictment (ECF No. 15) is DENIED. The Clerk of Court is respectfully directed to terminate the motion docketed at ECF No. 15.

**SO ORDERED.**

Dated:     New York, New York
           June 22, 2022                              John F. Keenan
                                          United States District Judge

13